FILED
2018 Jul-10 AM 10:49
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JOSEPH LEE CUNNINGHAM, deceased, and CARRIE D. CUNNINGHAM, as administrator of the estates of JOSEPH LEE CUNNINGHAM,<br><br>  Plaintiffs,<br><br>v.<br><br>USAA CASUALTY INSURANCE COMPANY,<br><br>  Defendant. | Case No.: 2:16-cv-00325-MHH |

## MEMORANDUM OPINION

Staff Sargent Joseph Lee Cunningham died on August 7, 2014 when his car was struck by an uninsured driver. As executrix of her husband's estate, Carrie Cunningham brings this action against defendant USAA Casualty Insurance Company, the company that provided uninsured motorist (UM) coverage to the couple under their auto insurance policy. Ms. Cunningham contends that because she and her late husband purchased coverage for multiple vehicles under the same USAA policy, Alabama's uninsured motorist coverage statute permits her to stack the coverage limits for each insured vehicle. On this basis, Ms. Cunningham seeks a total of $300,000 from USAA, $200,000 more than the company has paid on her

1

claim. USAA contends that the Cunningham's policy does not allow internal stacking and that Alabama's law allowing internal stacking does not apply to this case. USAA asks the Court to enter judgment in its favor on these grounds. For the reasons explained below, the Court grants USAA's motion and enters judgment in USAA's favor.

## I. FACTUAL BACKGROUND

As a member of the armed forces, Mr. Cunningham was stationed in various locations during his career. (Doc. 21–1, pp. 153–54). Mr. Cunningham purchased the USAA auto insurance policy at issue in 2011 while he was stationed at Fort Benning in Georgia, where he and his family had lived for several years. (Doc. 21–1, pp. 154–55, 182, 198). In November 2011, Mr. Cunningham was transferred to a duty station in Kansas. (Doc. 21–1, pp. 182, 189). The first address Mr. Cunningham listed on the auto policy was in Junction City, Kansas. (Doc. 21–1, p. 103).

Mr. Cunningham's family joined him in Ogden, Kansas in June 2012. The Cunninghams then bought a home in Trussville, Alabama, and in August of 2013, Ms. Cunningham and the couple's four daughters moved to the Trussville home. (Doc. 21–1, pp. 154, 170, 177). Mr. Cunningham remained in Kansas. (Doc. 21–1, p. 168). Mr. Cunningham moved to Manhattan, Kansas after his family's

2

departure. (Doc. 21–1, pp. 177–78). According to Ms. Cunningham, Mr. Cunningham visited the Trussville home on six occasions and stayed for multiple days each time while he was stationed in Kansas. (Doc. 21–1, pp. 168–69).

Mr. Cunningham completed his assignment in Kansas in June of 2014. (Doc. 21–1, p. 70). He spent the month of July with his family in Trussville before moving in August to his new duty station in Georgia. (Doc. 21–1, pp. 169–70). Mr. Cunningham was driving in Tattnall County, Georgia at the time of his death. (Doc. 25, p. 25).

At the time of Mr. Cunningham's death, his auto insurance policy covered three vehicles: a Honda minivan, a Chevrolet pickup truck, and a Lexus sedan, the vehicle involved in Mr. Cunningham's fatal crash. (Doc. 21–1, p. 6). Before the accident, USAA mailed the final policy renewal notice to Mr. Cunningham's address in Manhattan, Kansas. (Doc. 21–1, pp. 6, 54–55). The policy was designated as a "Kansas Auto Policy." (Doc. 21–1, p. 6). The policy stated that each insured vehicle was garaged in Manhattan, Kansas, though Ms. Cunningham testifies that the garage location for the minivan was later changed to Alabama. (Doc. 21–1, pp. 6, 222).

After leaving Kansas, Mr. Cunningham updated his USAA policy information once with a new address in Glennville, Georgia near his new duty

station at Fort Stewart. (Doc. 21–1, pp. 104, 120). When USAA processed the UM claim arising from the fatal accident, the company was aware of Mr. Cunningham's Georgia address and of the USAA homeowner's policy on the family's Trussville home. (Doc. 21–1, pp. 94, 99). When USAA reviewed the UM claim on Mr. Cunningham's policy, the company concluded that Mr. Cunningham's Lexus was primarily garaged in Georgia and that internal stacking did not apply to the claim. (Doc. 21–1, pp. 77, 98).

## II. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To demonstrate that there is a genuine dispute as to a material fact that precludes summary judgment, a party opposing a motion for summary judgment must cite "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). When considering a summary judgment motion, the Court must view the evidence in the record and draw reasonable inferences in the light most favorable to the non-moving party. *White v. Beltram Edge Tool Supply, Inc.*, 789 F.3d 1188, 1191 (11th Cir. 2015). "The court need consider only the cited

materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

## III. DISCUSSION

The Cunningham's USAA auto insurance policy does not permit internal stacking of coverage limits. (Doc. 21–1, p. 22). Ms. Cunningham contends that Alabama's Uninsured Motorist Coverage Statute modifies the policy to permit internal stacking. The Court disagrees.

### a. ALABAMA'S UNINSURED MOTORIST COVERAGE STATUTE

A dispute over a claim for insurance coverage is governed by the common law of contracts. *Strength v. Ala. Dept. of Fin., Div. of Risk Mgmt.*, 622 So. 2d 1283, 1289 (Ala. 1993). A federal court exercising diversity jurisdiction over a state law contract claim applies the choice of law principles of the state in which it sits. *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 694 (11th Cir. 2016). Although Alabama courts generally apply the substantive law of the state where the parties made their contract, the general rule is displaced "when the case involves a mandatory statute, such as the Alabama uninsured/underinsured-motorist statute." *Smith v. State Farm Mut. Auto Ins. Co.*, 952 So. 2d 342, 346 (Ala. 2006).

Alabama's uninsured motorist statute states that:

> No automobile liability or motor vehicle liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle *shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state* unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in subsection (c) of section 32–7–6, under provisions approved by the commissioner of insurance for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom; provided, that the named insured shall have the right to reject such coverage; and provided further, that unless the named insured requests such coverage in writing, such coverage need not be provided in or supplemental to a renewal policy where the named insured had rejected the coverage in connection with the policy previously issued to him by the same insurer.

Ala. Code § 32–7–23(a) (emphasis added). The statute permits the insured to recover the sum of the primary coverage limit and up to two additional coverage limits for vehicles insured under the same policy. Ala. Code § 32–7–23(c). As the text indicates, Alabama's statute applies when the plaintiff shows both that the policy at issue was delivered or issued for delivery in Alabama and that the vehicle involved was principally garaged in Alabama. *See Smith*, 952 So. 2d at 348.

### 1. Issued for Delivery

USAA did not "deliver" a policy to the Cunninghams in Alabama or issue a policy for delivery to the Cunninghams in Alabama. It is undisputed that USAA did not deliver a policy to Alabama because it did not mail information pertaining

to Mr. Cunningham's auto insurance to an Alabama address. (Doc. 21–1, pp. 105, 113). Ms. Cunningham nonetheless contends that USAA issued the policy for delivery in Alabama because USAA had notice that Mr. Cunningham maintained his permanent address in Alabama. (Doc. 25, pp. 8–9). As evidence of notice, Ms. Cunningham points to the fact that USAA provided homeowner's insurance on the Cunningham's Trussville house. (Doc. 25, p. 9). She also posits that because USAA provided Mr. Cunningham with auto insurance, the company must have known that he had an Alabama driver's license and was an Alabama domiciliary. (Doc. 25, p. 9). The Court is not persuaded.

To determine whether Alabama's statue applies, the Court looks to how Alabama courts have interpreted the phrase "issued for delivery." Alabama courts have looked to the mailing address to determine the state to which a policy was "issued for delivery." USAA mailed renewal notices for a Kansas auto policy to Mr. Cunningham at his Kansas address.[1]

Similar facts persuaded the Alabama Supreme Court in *Cotton v. State Farm Mutual Auto Insurance Co.*, that the defendant insurance company had issued a UM auto policy for delivery in Tennessee despite the fact that the insured spent most of his time in Alabama where his vehicle was principally garaged. 540 So.

---

[1] Even the correspondence for the homeowner's policy on which Ms. Cunningham relies for her notice argument was delivered to Mr. Cunningham at his Kansas address. (Doc. 21–1, pp. 99–101).

2d 1387, 1388 (Ala. 1989). The Alabama Supreme Court observed that Tennessee law was "what [the insured] bargained for. It would have been simple enough to notify State Farm that he would be in Alabama most of the time and that it should mail his policies to him here. He chose not to do so." *Cotton*, 540 So. 2d at 1388.

The same observation applies here. Given the auto policy's frequent and prominent references to Kansas, including in the policy's UM coverage section, it is difficult to infer that Mr. Cunningham bargained for Alabama's law. (Doc. 21–1, pp. 5–7, 29). The policy placed the responsibility for updating policy information – including where he and his vehicles were located – on Mr. Cunningham. (Doc. 21–1, p. 35). The record indicates that Mr. Cunningham kept USAA up to date with new addresses in Kansas, and he provided a new Georgia address when he relocated there. (Doc. 21–1, pp. 101, 104–05). Conspicuously absent from USAA's records is an Alabama address for either Mr. Cunningham or for his Lexus.

Ms. Cunningham contends that this case is governed not by *Cotton* but by the Alabama Supreme Court's later decision in *Taylor v. Tennessee Farmer's Mutual Insurance Co.*, 659 So. 2d 30 (Ala. 1995). In that case, the insured, Mr. Taylor, relocated from Tennessee to Birmingham, Alabama while his wife attended medical school in Birmingham. *Taylor*, 659 So. 2d at 31. Mr. Taylor renewed his auto policy three times after relocating to Birmingham. *Taylor*, 659

So. 2d at 31. When the insurer attempted to mail Mr. Taylor's premium notice to his original Tennessee address, the notice was returned to the insurer as undeliverable with the a notation about the couple's new Birmingham address. *Taylor*, 659 So. 2d at 31. The insurer investigated and learned that he had relocated to Birmingham with his wife while she attended school. *Taylor*, 659 So. 2d at 31. Despite Mr. Taylor's failure to formally notify his insurer of his change in address, the Alabama Supreme Court concluded that the insurer had issued the auto policy for delivery in Alabama in light of the fact that the insurer continued to renew Mr. Taylor's policy after confirming that he was living, for a time, in Birmingham. *Taylor*, 659 So. 2d at 32.

But *Taylor* is distinguishable from the facts Ms. Cunningham presents. The *Taylor* decision turned largely on the fact that the insurer had information unambiguously indicating that Mr. Taylor was residing in Alabama. *See Smith*, 952 So. 2d at 348 (citing *Taylor*, 659 So. 2d at 32). At the time of his death, Mr. Cunningham arguably was an Alabama domiciliary. But even if the Court accepts that assertion, the record does not contain evidence to support the conclusion that USAA knew that Mr. Cunningham resided in Alabama or that he did so while his USAA policy was in force. (*See* Doc. 21–1, p. 105).

Although Ms. Cunningham testifies that Trussville was her husband's primary residence, elsewhere she acknowledges that Mr. Cunningham was only in

9

Trussville for a few weeks at a time before he returned to Kansas. (Doc. 21–1, pp. 167–69, 171). Construing Ms. Cunningham's testimony generously, the record indicates that during the year after the family bought the Trussville house, Mr. Cunningham spent a third of his time in Trussville and resided in Kansas for the balance of the year until he relocated to Georgia. (Doc. 21–1, p. 168–69). Ms. Cunningham submits additional evidence that Mr. Cunningham used an Anniston, Alabama address for non-insurance purposes, but she concedes that this is his father's address and that Mr. Cunningham did not reside there while covered by USAA's policy. (Doc. 21–1, pp. 64, 224–25). Even had Mr. Cunningham spent most of his time in Trussville, *Cotton* indicates that that fact alone would not support the conclusion that USAA issued Mr. Cunningham's policy for delivery in Alabama so long as he continued to use his Kansas address to correspond with USAA. 540 So. 2d at 1388.

A later Alabama Supreme Court decision addressing the question of UM coverage stacking indicates that Alabama law may govern a policy originally formed elsewhere but that courts take a practical view of the facts in determining whether a policy is issued for delivery in Alabama. *See Smith*, 952 So. 2d 342. In *Smith*, the insured asked her insurer to mail all renewals, premium notices, and other information relating to her Florida auto policy to her Alabama address. *Smith*, 952 So. 2d at 349. The evidence showed that the insured had informed her

insurer that she primarily resided in Alabama and was obtaining Florida auto insurance in an effort to lower the property taxes on her second home in Florida. *Smith*, 952 So. 2d at 345, 349. Under these circumstances, the Alabama Supreme Court concluded that there was substantial evidence that the insurer issued the nominally Florida policy for delivery in Alabama. *Smith*, 952 So. 2d at 349. But again, this finding turned not on the abstract question of the insured's domicile, but on practical considerations. *Smith*, 952 So. 2d at 349.

The record here does not contain evidence that demonstrates either that Mr. Cunningham resided primarily in Alabama or that he informed USAA of that fact. The evidence in this regard points primarily to Kansas as the state to which USAA issued the Cunningham's auto policy for delivery.[2] Therefore, Alabama's uninsured motorist statute does not apply to this case.

## 2. **Principally Garaged**

Even if the Court assumed that USAA knew that Mr. Cunningham resided in Alabama and issued his auto policy for delivery in Alabama, Alabama law still would not apply because Ms. Cunningham has not presented evidence to show that Mr. Cunningham's Lexus was principally garaged in Alabama. Ms. Cunningham contends that the term "garaged" is ambiguous and that it therefore should be

---

[2] Although the record does not indicate that USAA ever sent policy information to Mr. Cunningham's last Georgia address, the fact that he updated his policy information to reflect that he was physically residing in Georgia, (Doc. 21–1, p. 106), gives Georgia some plausible connection to this claim. The Court discusses the question of whether Kansas or Georgia law governs this insurance claim below.

interpreted in her favor. (Doc. 25, p. 10). She argues that the Court should consider a vehicle to be principally garaged where the owner is domiciled. (Doc. 25, p. 14). Again, the Court is not persuaded.

Because the question is whether Alabama's statute applies, the Court looks to how the term "principally garaged" is defined under Alabama law. To the extent the term "principally garaged" is ambiguous, the Court applies principles of statutory interpretation, rather than contractual interpretation, to resolve the ambiguity. When interpreting a statute, the Court gives words their "plain, ordinary, and commonly understood meaning," and when "a term is not defined in a statute," the Court uses "the commonly accepted definition of the term." *Bean Dredging, LLC v. Ala. Dept. of Rev.*, 855 So. 2d 513, 517 (Ala. 2003).

The Alabama Legislature did not define the term "principally garaged" in the uninsured motorist coverage statute. A straightforward reading of the term "principally garaged" denotes a vehicle's chief or primary location. Although this location could be determined by reference to more than one consideration — where the vehicle is registered for instance — the plainest reading is that a vehicle is principally garaged in the location where it is kept most of the time. Such a location may frequently coincide with the insured's domicile, but the statutory text does not indicate that the term must be read in reference to the vagaries of a

person's domicile, especially because the insured may not live in his state of domicile or keep his vehicle in that state, as this case illustrates.

Alabama cases addressing the issue of stacking in the context of UM claims tend not to give the "principally garaged" prong of the statute much attention, perhaps because its application is often straightforward. The Alabama Supreme Court's opinion in *Cherokee Insurance Co., Inc. v. Sanches* indicates that a vehicle is principally garaged where that vehicle physically is located most of the time, rather than where the insured in domiciled. 975 So. 2d 287 (Ala. 2007). In that case, a commercial driver operating a truck, which was owned by a Tennessee company and insured with a Tennessee policy, was involved in an accident with an unidentified driver. *Cherokee Ins.*, 975 So. 2d at 288. The truck driver argued that Alabama law applied to his UM claim. The Alabama Supreme Court determined that, Tennessee connections notwithstanding, the truck was principally garaged in Alabama because the evidence showed that it was regularly operated, maintained, and stored in Alabama. *Cherokee Ins.*, 975 So. 2d at 293.[3] The Alabama Supreme Court's treatment of the subject indicates that the straightforward reading of the term "principally garaged" is the correct reading. The parties have not cited, and

---

[3] The Alabama Supreme Court ultimately decided that Alabama law did not apply to the driver's UM claim because the evidence unambiguously showed that the policy covering the truck had been delivered and issued for delivery in Tennessee. *Cherokee Ins.*, 975 So. 2d at 293.

the Court has not found, a case suggesting that the term has a meaning beyond its plain meaning.

With the plain meaning of "principally garaged" in mind, the evidence in the record again points to Kansas as the primary location for Mr. Cunningham's Lexus. The USAA auto policy states that as of April 22, 2014, Mr. Cunningham's Lexus was garaged in Kansas. (Doc. 21–1, pp. 6, 110). The record indicates that Mr. Cunningham did not change the garage information for the Lexus although he was contractually required to do so if he principally garaged the vehicle somewhere other than the location listed on the policy. (Doc. 21–1, pp. 35, 222). The record also indicates that Mr. Cunningham kept the Lexus in Kansas and that the Lexus was registered in Kansas. (Doc. 21–1, pp. 68, 178–79).

Although Ms. Cunningham argues that the Lexus could be tied to the Trussville address, there is little evidence to support the conclusion that Mr. Cunningham resided at the Trussville house, and thus the Lexus's connection to that address is too attenuated. The vehicle in question had nothing more than a transitory presence in Alabama.[4] An argument that the Lexus was garaged in

---

[4] The Court acknowledges that UM coverage inures to the person, not the vehicle. *See Peachtree Cas. Ins. Co. v. Sharpton*, 768 So. 2d 368, 372 (Ala. 2000). But USAA acknowledges that Mr. Cunningham was covered by UM insurance, and the company paid his estate's claim in accordance with his policy's limits. Thus the question presented is not whether Mr. Cunningham was covered but the extent of that coverage, and Alabama's Uninsured Motorist Statute requires the Court to inquire into the vehicle's location to determine whether Alabama law applies.

Georgia at the time of Mr. Cunningham's accident might find support in the record, but there is no genuine dispute as to whether Mr. Cunningham primarily garaged his Lexus in Alabama. Therefore, Alabama's uninsured motorist coverage statute does not apply to this case.

### b. INTERNAL STACKING UNDER KANSAS AND GEORGIA LAW

Without a statutory provision to alter the insurance policy's terms, the presumption of lex loci contractus applies to the parties' dispute.[5] Although USAA appears to have based its original decision regarding internal stacking on Georgia law, the company now contends that Kansas law applies. (Doc. 21–1, pp. 77–78; Doc. 22, pp. 13–14). The Court does not have to choose between Kansas law and Georgia law because neither state's law permits Ms. Cunningham to internally stack coverage limits for the vehicles covered by her husband's auto policy. Kansas law does not permit the insured the internally stack coverage limits on a single policy. *See* Kan. Stat. § 40-284(d). Although Georgia law allows the insured to stack the coverage limits of multiple separate policies with UM benefits, Georgia prohibits the internal stacking of coverage limits for multiple vehicles

---

[5] Ms. Cunningham argues that an exception to lex loci contractus exists where another state's law conflicts with a fundamental policy embodied in an Alabama statute. (Doc. 25, p. 16). She cites the Uninsured Motorist Statute as evidence of legislative intent to protect the ability of Alabamians to internally stack coverage on UM claims. (Doc. 25, p. 17). The Alabama Supreme Court foreclosed this argument in its *Cherokee Insurance* decision when it noted that "[i]n interpreting § 32–7–23, we do not discern any legislative intent that the public policies encompassed in our UM statute were intended to take precedence over those of sister states." 975 So. 2d at 294.

listed under the same policy. *See Crafter v. State Farm Ins. Co.*, 554 S.E. 2d 571, 573 (Ga. Ct. App. 2001); *Georgia Farm Bureau Mut. Ins. Co. v. Owens*, 343 S.E. 2d 699, 700 (Ga. Ct. App. 1986). Consequently, Ms. Cunningham cannot obtain the relief she seeks regardless of which law applies.

## IV. CONCLUSION

For the reasons stated above, the Court grants USAA's motion and enters judgment in USAA's favor on the claim brought by Ms. Cunningham. The Court will enter a separate order dismissing this case with prejudice.

**DONE** and **ORDERED** this July 10, 2018.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE